UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT MATHIEU,

                              Petitioner,

                    -v-

DEPARTMENT OF HOMELAND SECURITY,

                              Respondent.

26 Civ. 4630 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

The decision resolves the *pro se* habeas petition of a noncitizen in immigration detention.

On October 10, 2025, Immigration and Customs Enforcement ("ICE") detained petitioner Albert

Mathieu.  On October 22, 2025, an immigration judge ("IJ") denied bond, on the ground that

Mathieu had failed to carry his burden of showing he did not pose a danger to the community.

On June 2, 2026, Mathieu filed this petition.  It argues that Mathieu's due process rights have

been violated, because he has been detained for eight-plus months without a bond hearing at

which the Government bears the burden of proof.  He seeks immediate release or, alternatively, a

new, burden-shifted bond hearing.  The Government opposes.

For the following reasons, the Court grants the petition insofar as it seeks a bond hearing

at which the Government bears the burden of proof, and denies it insofar as it seeks immediate

release.

I.      Background[1]

---

[1] This account draws on the following materials: Mathieu's petition, Dkt. 1; the Government's
opposition, Dkt. 7; declaration of deportation officer Spiro Vandoros, Dkt. 8; repository inquiry
(*i.e.*, "rap sheet"), Dkt. 9-1; arrest warrant (Form I-200), Dkt. 9-2; notice to appear (Form I-862),
Dkt. 9-3; notice of custody determination (Form I-286), Dkt. 9-4; October 22, 2025 bond hearing
transcript, Dkt. 9-5; October 22, 2025 bond order, Dkt. 9-6; October 10, 2025 record of

### A.    Mathieu's 2019 Arrival in the United States and Visa Overstay

Mathieu is a citizen of Saint Lucia.  Dkt. 8 ("Vandoros Decl.") ¶ 3.  On October 16, 2019,

he was admitted to the United States as a "B-2 Temporary Visitor for Pleasure," with

authorization to remain here temporarily until April 25, 2020.  *Id.* ¶ 4.  Mathieu overstayed the

visa without authorization.  *Id.* ¶¶ 7, 9.  In 2024, he married his wife, with whom he has a step-

daughter.  Dkt. 9-5 ("Bond Hr'g Tr.") at 9; Dkt. 1 ("Pet.") at 6.  Both his wife and step-daughter

are U.S. citizens.  Pet. at 6.

### B.    Mathieu's 2024 Criminal Arrest, and Later Guilty Plea and Sentencing

On September 2, 2024, Mathieu was arrested by the Hempstead Police Department in

Nassau County, New York for (1) third-degree assault, in violation of New York Penal Law

("NYPL") § 120.00(1); (2) criminal obstruction of breathing, in violation of NYPL § 121.11(a);

and (3) third-degree criminal mischief, in violation of NYPL § 145.05(2).  *Id.* ¶ 5.  He was

arraigned in Naussau County District Court under docket number 24 Cr. 16330.  *Id.*[2]  On

January 23, 2025, Mathieu pled to guilty to fourth-degree criminal mischief, in violation of

NYPL § 145.00(3), and disorderly conduct, in violation of NYPL § 240.20(7).  *Id.*  On

January 30, 2026, he was sentenced to a conditional discharge.  *Id.*

### C.    Mathieu's October 10, 2025 ICE Arrest and Post-Arrest Processing

On October 9, 2025—more than a year after Mathieu's criminal arrest—ICE issued a

Form I-200 arrest warrant for him, based on probable cause that he was removable from the

United States for overstaying his 2019 visa.  *Id.* ¶ 7; *see also* Dkt. 9-2 (arrest warrant or "Form I-

---

deportable alien (Form I-213), Dkt. 9-7; and Nassau County Criminal Court disposition
certificate, Dkt. 9-8.

[2] Mathieu's criminal case was later transferred to Superior Court under docket number 25
Cr. 70207.

200"). On October 10, 2025, ICE officers arrested Mathieu inside the Probation Department, after his scheduled appointment had concluded. Vandoros Decl. ¶ 8. They then transported him to ICE's Enforcement and Removal Operations office in Central Islip, New York. *Id.*

The same day, during post-arrest processing in Central Islip, ICE served Mathieu with a Form I-862 notice to appear ("NTA"). *Id.* ¶ 9; *see also* Dkt. 9-3. It charged him as removable, pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B) and 8 U.S.C. § 1227(a)(1)(B), on the ground that, after admission, he remained in the United States longer than permitted. Vandoros Decl. ¶ 9. ICE filed the NTA with the Executive Office of Immigration Review ("EOIR"), which initiated removal proceedings against Mathieu. *Id.* ICE determined that Mathieu had failed to establish that he did not pose a danger to the public, and detained him under 8 U.S.C. § 1226(a)(1) pending his removal. *Id.* ¶ 10. ICE served Mathieu with a Form I-286 notice of custody determination, which Mathieu signed and dated that day. *Id.*; *see also* Dkt. 9-4. On October 11, 2025, ICE transferred Mathieu to the Orange County Jail in Goshen, New York, where he remains detained today. Vandoros Decl. ¶¶ 13, 30; Pet. at 1.

### D. Mathieu's October 22, 2025 Bond Hearing

On October 22, 2025, IJ Charles Conroy held a bond hearing. Dkt. 9-5 ("Bond Hr'g Tr.") at 3. Mathieu appeared from the Orange County Jail by videoconference; his counsel in that proceeding, Clement A. Francis, appeared in person. *Id.*[3] The IJ admitted all documentary submissions by the parties, to be "given appropriate weight under the circumstances." *Id.* at 6. The IJ then proceeded to hear closing arguments, stating that "dangerousness is the issue here" and directing Mathieu's counsel to "address that first." *Id.* at 7.

---

[3] At the outset, the IJ noted that, due to a "technical hitch on our [*i.e.*, the Government's] end," Mathieu's counsel had timely filed a 75-page submission, but it had not been received until the day before the hearing. *Id.* at 4–5. The IJ reviewed it before proceeding with the hearing. *Id.*

On this point, Mathieu's counsel stated:

> I looked at the police report for the first time yesterday, and it's very unfortunate and sad that it is totally incorrect.  It references that [Mathieu] struck his wife multiple times about the face causing substantial pain[, and] put his hands around her neck causing her difficulty breathing.  Your Honor, that never ever ever happened.  The wife is here to give testimony.  She's given an affidavit to that effect.

*Id.* at 7–8.  The IJ interjected and held that Mathieu's counsel had waived (1) any objection to the police report, and (2) the ability to call Mathieu's wife as a witness.  *Id.* at 8.  The IJ precluded Mathieu's wife from testifying.  *Id.* at 8, 12.

Continuing with his summation, Mathieu's counsel reiterated that Mathieu had "never ever put his hands on his wife."  *Id.* at 9.  He noted the wife's "detailed and explicit" affidavit, which attested that she had been "the person to cause that matter [*i.e.*, Mathieu's criminal charges] to occur."  *Id.* at 9.  Counsel described Mathieu as a "law-abiding person who lives with his wife and their daughter," and stated that Mathieu's employer had submitted a letter portraying him as a "very decent hard-working individual."  *Id.* at 9.

The Department of Homeland Security ("DHS") attorney then gave brief closing argument.  He stated that Mathieu had not met his burden to show he was not a danger to the community.  *Id.* at 10.  He argued that the IJ could "go off the facts of the arrest report," which indicated "there was an incident that did occur."  *Id.*  Alternatively, he argued, Mathieu had not shown that he was not a flight risk, because he had only filed one year of tax returns (despite having lived in the United States for five years by that point) and had "not been abiding by immigration laws for five years."  *Id.* at 10–11.

On rebuttal, Mathieu's counsel argued that the lack of tax returns was attributable to the fact that Mathieu had been working only during the previous eight months.  *Id.* at 11.  He also reiterated his view that the police report was "totally wrong."  *Id.*

4

The IJ then orally ruled from the bench. He stated that the wife's testimony had been precluded because (1) no witness list had been provided and (2) Mathieu's counsel had answered "no" when asked whether he wished to present any other information before closing arguments. *Id.* at 12. The IJ then denied bond, reasoning as follows:

> [Mathieu] pled guilty to a couple of charges arising from the incident. The other charge is still pending, the assault charge. I have a statement from the police officer signed by the police officer, the police report which you [Mathieu's counsel] raised no objections to when given the opportunity to do so. So based on all of that, I find the respondent has failed to meet his burden to demonstrate he's a danger to the community . . . .

*Id.* at 12–13. Mathieu did not appeal the decision to the Board of Immigration Appeals ("BIA"). Vandoros Decl. ¶ 18.

### E.    Mathieu's Other Immigration Proceedings

On October 10, 2025, EOIR issued a hearing notice, scheduling Mathieu's initial master calendar hearing for October 21, 2025. *Id.* ¶ 12. On November 24, 2025, after EOIR rescheduled the hearing multiple times, Mathieu appeared for such by videoconference, with counsel present. *Id.* ¶ 22. An IJ sustained the charge of removability and designated Saint Lucia as the country of removal. *Id.*

On January 8, 2026, Mathieu filed a Form I-485 ("Application to Register Permanent Residence or Adjust Status"). *Id.* ¶ 25. On January 12, 2026, Mathieu appeared for a master calendar hearing by videoconference, with counsel present. *Id.* ¶ 26. The IJ scheduled an individual merits hearing on Mathieu's application. *Id.* On March 3, 2026, at that hearing, the IJ denied Mathieu's application and issued a removal order. *Id.* ¶ 31. On March 30, 2026, Mathieu appealed the removal order to the BIA. *Id.* ¶ 32. That appeal remains pending. *Id.*

### F.    This Litigation

On June 2, 2026, Mathieu filed this petition *pro se*.  Dkt. 1.  That day, the Court set a briefing schedule.  Dkt. 4.  On June 9, 2026, the Government opposed, attaching a supporting declaration and exhibits.  Dkts. 7–9 (described in note 1, *supra*).  Mathieu did not reply.

## II.    Applicable Legal Standard

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention.  *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

## III.    Discussion

The parties agree that Mathieu is detained under § 1226(a), under which detention is discretionary and requires a prompt bond hearing.  They also agree that he received a bond hearing on October 22, 2025, at which Mathieu bore the burden of proof to show that he was not a danger to the community or a flight risk.

They disagree, however, on whether due process requires a new bond hearing at which the *Government* bears that burden.  Mathieu argues that due process requires such a burden-shifted bond hearing.  The Government counters that Mathieu's detention of eight-plus months has not been long enough to warrant such a hearing.[4]

---

[4] The Government does not argue that Mathieu failed to exhaust his administrative remedies, notwithstanding that he did not appeal the IJ's bond decision.  Any such argument would be unavailing.  BIA precedent—which, as the Government notes, Opp'n at 9, binds IJs—holds that the burden of proof at bond hearings is properly placed on noncitizens.  *See Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006).  Any appeal by Mathieu on the grounds he raises here—*i.e.*, that due process entitles him to a burden-shifted bond hearing—would thus have been futile.  *See*

Mathieu is correct, insofar as due process entitles him to a bond hearing at which the Government bears the burden of showing, by clear and convincing evidence, that he is either a danger to the community or a flight risk. The Court sets out the governing legal framework, and then applies it to this case.

### A.    Where Due Process Requires a Bond Hearing at Which the Government Bears the Burden

The Due Process Clause of the Fifth Amendment forbids the Government from depriving any "person" of "life, liberty, or property" without "due process of law." U.S. Const. amend. V. It covers noncitizens within the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

In *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Second Circuit held that due process requires a noncitizen subjected to "prolonged detention" under § 1226(a) to receive a bond hearing, at which the Government must show, by clear and convincing evidence, that he is a danger to the community or a flight risk. *Id.* at 846, 848, 855. In evaluating the petitioner's due process claim, the Circuit applied the *Mathews v. Eldridge* balancing test, weighing (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 851 (quoting *Mathews v. Eldridge*, 424 U.S. 319,

---

*Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003); *see, e.g.*, *Quintanilla v. Decker*, No. 21 Civ. 417, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (excusing petitioner's non-exhaustion of administrative remedies, due to futility, under *Guerra*, of same argument); *J.C.G. v. Genalo*, No. 24 Civ. 8755, 2025 WL 88831, at *5–6 (S.D.N.Y. Jan. 14, 2025) (same); *B.S. v. Joyce*, No. 22 Civ. 9738, 2023 WL 1962808, at *3 (S.D.N.Y. Feb. 13, 2023) (same).

335 (1976)); *cf. Black v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024), *cert. granted sub nom.*

*Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026) ("due process challenges

to prolonged detention under [§] 1226(c) should also be reviewed under *Mathews*").

After *Velasco Lopez*, numerous courts in this District have ordered bond hearings, with

the burden shifted to the Government, after comparable (and shorter) periods of detention. *See,*

*e.g.*, *Quintanilla v. Decker*, No. 21 Civ. 417, 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021)

(ordering burden-shifted bond hearing after three months' detention); *Raspoutny v. Decker*, 708

F. Supp. 3d 371, 384 (S.D.N.Y. 2023) (same, after seven months' detention); *Darko v. Sessions*,

342 F. Supp. 3d 429, 431, 435–36 (S.D.N.Y. 2018) (same); *J.I.T. v. Francis*, No. 25 Civ. 6749,

2025 WL 3295851, at *2, 5 (S.D.N.Y. Nov. 26, 2025) (same, after nine months' detention);

*J.C.G. v. Genalo*, No. 24 Civ. 8755, 2025 WL 88831, at *1–2, 10 (S.D.N.Y. Jan. 14, 2025)

(same); *Banegas v. Decker*, No. 21 Civ. 2359, 2021 WL 1852000, at *1, 3 (S.D.N.Y. May 7,

2021) (same).[5]

### B.    Application

Applying the *Velasco Lopez* framework, the Court finds all three *Mathews* factors to

favor Mathieu.

First, as to the "private interest" affected by the official action, the "interest in being free

from imprisonment" is the "most significant liberty interest there is." *Velasco Lopez*, 978 F.3d

at 851.  Mathieu has been detained for more than eight months at the Orange County Jail, which

also houses pretrial criminal defendants and those serving criminal sentences. *See id.* at 851

(describing same facility).  He has been unable to see his family outside visiting hours and to

---

[5] The Government acknowledges that the weight of authority favors a bond hearing at which it
bears the burden of proof. *See* Opp'n at 12 n.5.

maintain his previous employment. *Id.* He avers, and the Government does not dispute, that his detention negatively impacts his wife and step-daughter, both of whom are U.S. citizens; that he is their sole economic provider; and that, since he was detained, his wife has "lost her car and also her job," and might lose their apartment. Pet. at 6. And, although his eight-plus-month detention is shorter than Velasco Lopez's 15-month detention, it is materially longer than the six-month, presumptively reasonable duration of detention following a removal order. *See Zadvydas*, 533 U.S. at 701. This factor thus weighs heavily in Mathieu's favor. *See, e.g.*, *Quintanilla*, 2021 WL 707062, at *3 (private interest favored petitioner detained for some three months); *Raspoutny*, 708 F. Supp. 3d at 384 (same, where petitioner detained for seven months); *Darko*, 342 F. Supp. 3d at 431, 435–36 (same); *J.I.T.*, 2025 WL 3295851, at *2, 5 (same, where petitioner detained for nine months).

The second factor—risk of an erroneous deprivation of Mathieu's liberty interest, and the value of the procedural safeguards at issue—also favors a burden-shifted bond hearing. The transcript of the bond hearing makes clear that the Government's arguments, and the IJ's decision, were largely based on Mathieu's bearing the burden of proof. The DHS attorney's closing argument was four sentences long. It began: "Judge, I don't believe the respondent has met his burden to show that he's not a danger." Bond Hr'g Tr. at 10. The DHS attorney then stated that, notwithstanding the factual dispute Mathieu's counsel had raised regarding the circumstances of his criminal arrest, "we can go off the facts of the arrest report which would establish that there was an incident that did occur and that was reported in an arrest report at the time and place of the incident or shortly thereafter." *Id.* The DHS attorney did not further describe that "incident" in additional detail, or make any other argument why public safety required detention. He then argued, in the alternative, that Mathieu had failed to show that he

9

was not a flight risk, based on his having filed "only one year of tax returns" and not abiding by immigration laws for five years. *Id.* at 10–11. Had the Government borne the burden of proof, it is by no means likely that the IJ would have found that the Government had adduced "clear and convincing evidence" that Mathieu was a danger to the community (or a flight risk).

And the IJ denied bond expressly based on Mathieu's failure to carry his burden. The IJ repeatedly referenced that burden throughout the hearing. *See, e.g.*, *id.* at 7 ("Dangerousness is the issue here[,] so I think you [Mathieu's counsel] need to address that first"), 11 ("it's his [Mathieu's] burden"). Based on the criminal charges and a police officer's statement concerning the underlying offense, the IJ found that Mathieu "failed to meet his burden to demonstrate he's [not] a danger to the community." *Id.* at 12–13.

To be sure, the Government presented some evidence of dangerousness—the conduct underlying Mathieu's 2024 arrest. But the IJ did not make an "unequivocal determination" that Mathieu posed a danger to the community. *J.I.T.*, 2025 WL 3295851, at *4. The IJ instead expressly framed the ruling as based on Mathieu's failure to "present evidence strong enough to overcome the evidentiary burden placed on him." *Id.* The IJ's allocation of the burden thus appears to have been consequential to his decision to keep Mathieu detained. *See, e.g.*, *Velasco Lopez*, 978 F.3d at 853–54 (second *Mathews* factor favored petitioner, where IJ had drawn adverse inferences against petitioner from lack of information concerning recent criminal charges); *J.I.T.*, 2025 WL 3295851, at *4 (same, where bond hearing record was "replete with findings based on the detained Petitioner's inability to meet his burden"); *Fajardo v. Decker*, No. 22 Civ. 3014 (PAE), 2022 WL 17414471, at *3 (S.D.N.Y. Dec. 5, 2022) (similar).[6] And,

---

[6] *See also J.C.G.*, 2025 WL 88831, at *8 ("Under the IJ's burden allocation, noncitizens are placed in the precarious position of proving, to the IJ's satisfaction, a negative—that they are not a threat to public safety or a flight risk. As the Second Circuit observed in *Black v. Decker*,

with Mathieu's appeal from the denial of status adjustment pending, his detention continues "without an end in sight." *Velasco Lopez*, 978 F.3d at 855; *see also Fajardo*, 2022 WL 17414471, at *3.

The third factor—the Government's interest—also favors Mathieu.  The Government has a strong interest in preventing danger to the community.  *See Zadvydas*, 533 U.S. at 690–91. But, as the Second Circuit noted in *Velasco Lopez*, the Government does not have an interest in the "prolonged detention of noncitizens who are neither dangerous nor a risk of flight," and "shifting the burden of proof to the Government to justify continued detention" promotes the Government's "paramount" interest in minimizing the impact of unnecessary incarceration. *Velasco Lopez*, 978 F.3d at 854.  Placing the burden on the Government "is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances" of erroneous detention.  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  And such is unlikely to impose an undue administrative or financial burden on the Government, because the Government "is generally in a better position than a detained noncitizen to gather and present evidence relevant to the bond determination."  *Fajardo*, 2022 WL 17414471, at *12 (cleaned up); *see also Linares Martinez v. Decker*, No. 18 Civ. 6527, 2018 WL 5023946, at *3 (S.D.N.Y. Oct. 17, 2018) (same).

The Government makes three counterarguments.  None is persuasive.

First, it cites three cases as ostensibly supporting that the burden of proof is properly placed on noncitizens detained under § 1226(a) at their bond hearing.  Opp'n at 12 n.5, 14–15. The first, *Raspoutny*, 708 F. Supp. 3d at 385, *supra*, held that due process entitled the petitioner

---

'proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern.'  As a result of this burden allocation, 'ambiguities, or lack of information, in the record result in an adverse inference against the detainee.'" (citation omitted)).

to a new bond hearing, at which the *Government* bore the burden. And the other two cases are readily distinguished. *See Lopez v. Barr*, 458 F. Supp. 3d 171, 173–74, 179–80 (W.D.N.Y. 2020) (denying burden-shifted bond hearing, where IJ found petitioner both a danger to the community and a flight risk, based on membership in MS-13 and recent sentencing by state court to 16–48 months' imprisonment for attempting to coerce others to join MS-13); *Huanga v. Decker*, 599 F. Supp. 3d 131, 136, 143–46 (S.D.N.Y. 2022) (same, where petitioner had been arrested and charged multiple times for drunk driving, was recently convicted on felony drunk driving charges, and then tested positive for drug use while on probation). Unlike in *Lopez* and *Huanga*—in which the risk of an erroneous liberty deprivation was low, given weighty and largely uncontroverted evidence of recent criminal conduct implicating public safety—Mathieu disputed the police report's account of the events underlying his 2024 criminal arrest. By the time ICE detained him in October 2025, moreover, Mathieu had been at liberty for more than a year since that arrest. Whether Mathieu would have prevailed at the bond hearing, had the Government and not he borne the burden of proof, is unknowable. But the circumstances here created a material risk of an erroneous deprivation of Mathieu's liberty, based on the allocation of the evidentiary burden to him.

Second, the Government argues that, had it borne the burden of proof at the October 22 bond hearing, the IJ would have still denied Mathieu bond. The hearing transcript belies that assertion. As described above, the IJ noted that the Government had offered some proof of Mathieu's dangerousness—in particular, a police report concerning the underlying incident for which Mathieu later pled guilty. But the IJ made clear that his ruling was based on Mathieu's failure to carry his burden to disprove dangerousness. *See* Bond Hr'g Tr. at 13 ("I find the respondent has failed to meet his burden to demonstrate he's a danger to the community, and I'm

12

denying bond."). And the Government's four-sentence closing argument—which began, "I don't believe the respondent has met his burden to show that he's not a danger" and, as to dangerousness, merely argued that "there was an incident that did occur and that was reported in an arrest report"—was exclusively based on the placement of the burden. *Id.* at 10–11.[7]

Third, the Government argues that, were the Court to order a new bond hearing, it should not require the IJ to consider alternatives to detention or Mathieu's ability to pay. It acknowledges, however, that this Court's decision in *Fajardo*—which ordered that an IJ consider such factors—would govern here, if the Court finds a new bond hearing warranted. Opp'n at 22. "[C]ourts in this District overwhelmingly agree that IJs must consider . . . alternatives to imprisonment and ability to pay [] when determining bond for a detained immigrant." *O.F.C. v. Decker*, No. 22 Civ. 2255, 2022 WL 4448728, at *10 (S.D.N.Y. Sept. 12, 2022) (collecting cases). Because the amount of bond becomes an issue only after an IJ has determined that the Government failed to show that a noncitizen posed a danger to the community, "refusing to consider ability to pay and alternative means of assuring appearance creates a serious risk that the noncitizen will erroneously be deprived of the right to liberty purely for financial reasons." *Black*, 103 F.4th at 158. These factors are also germane to the determination that detention is "reasonably related to the Government's purpose for committing the detainee." *Hernandez-Aviles v. Decker*, No. 20 Civ. 7636, 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020); *see also*

---

[7] *Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11, 13–15 (D. Mass. 2017), *vacated and remanded on other grounds*, No. 17-1918, 2018 WL 11444979 (1st Cir. Mar. 22, 2018), on which the Government relies, is inapposite. The court there held that the noncitizen had not been prejudiced by the allocation to him of the burden of proof at a bond hearing, where he was found to pose a danger to the community based on evidence of his gang affiliation, numerous arrests, and nine recent criminal charges, including for "carrying a dangerous weapon, carrying a dangerous weapon on school grounds, possession of a controlled substance, possession of ammunition, and assault with a dangerous weapon." *Id.* There is no evidence of the sort here.

*Hernandez v. Decker*, No. 18 Civ. 5026, 2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." (cleaned up)).  The IJ must consider these factors at the new bond hearing.

      **Overall assessment**:  All three *Mathews* factors favor Mathieu.  Due process thus requires a new bond hearing, at which the Government bears the burden of showing, by clear and convincing evidence, that he poses a danger to the community or a flight risk.  In determining whether to grant bond, the IJ shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring.  In determining the amount of any bond imposed, the IJ shall consider Mathieu's ability to pay.  *See, e.g.*, *Velasco Lopez*, 978 F.3d at 846, 855; *Fajardo*, 2022 WL 17414471, at *12–13; *Quintanilla*, 2021 WL 707062, at *3; *J.I.T.*, 2025 WL 3295851, at *2, 5; *J.C.G.*, 2025 WL 88831, at *2, 10; *Banegas*, 2021 WL 1852000, at *1, 3; *Darko*, 342 F. Supp. 3d at 431, 435–36; *B.S. v. Joyce*, No. 22 Civ. 9738, 2023 WL 1962808, at *5 (S.D.N.Y. Feb. 13, 2023); *Raspoutny*, 708 F. Supp. 3d at 385; *Calderon v. Arteta*, No. 26 Civ. 3399, 2026 WL 1383376, at *5 (S.D.N.Y. May 18, 2026).[8]

---

[8] Immediate release is not warranted, however, because due process in these circumstances does not entitle Mathieu to release, but only to a prompt bond hearing.  *See, e.g.*, *Fajardo*, 2022 WL 17414471, at *13 n.8; *A.P.A., v. Arteta*, No. 26 Civ. 3334, 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026).

## CONCLUSION

For the above reasons, the Court grants Mathieu's petition for a writ of habeas corpus, insofar as the petition seeks a burden-shifted bond hearing, but denies the petition, insofar as it seeks his immediate release.

Within two weeks of this decision, an IJ shall hold a bond hearing for Mathieu, at which the Government shall bear the burden of proving, by clear and convincing evidence, that Mathieu is a danger to the community or a flight risk. In determining whether to grant bond, the IJ shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring. In determining the amount of any bond imposed, the IJ shall consider Mathieu's ability to pay.

Within 48 hours of the bond hearing, the Government shall file a letter on the docket of this case stating the outcome of the hearing. It shall also promptly order a transcript or recording of the hearing, and file such on the docket.

The Clerk of Court is respectfully directed to mail a copy of this decision to (1) Mathieu at the address on file, and (2) Mathieu's immigration counsel, Clement A. Francis, Esq., at 3636 Prince Street, Suite 303, Flushing, New York 11354.

SO ORDERED.

Dated: June 17, 2026
New York, New York

_____
PAUL A. ENGELMAYER
United States District Judge

15